The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to give their attention, for the Court is now sitting. God save the United States and this Honorable Court. All right, we're going to hear a case of Christopher Doyle versus Hogan and I guess Mr. Staver, is that you? I can't hear you. Are you muted? Well, I'm unmuted now. I'm Matt Staver. Okay, we'll hear from you first, all right? Thank you, Your Honor. We have online, I don't know if you can see, Judge Richardson and myself and Judge Motz is online, audio. Okay. All right. Very good. May it please the Court, on behalf of the appellant, I respectfully request this Court to reverse the lower court's decision because the statute being challenged violates the First Amendment. It is viewpoint and content-based and it is also vague and overbroad. The law restricts the kind of speech or the content or particularly the viewpoint of speech of licensed counselors. In order to determine whether the law applies, you have to look at what is actually being said. In this particular case, the law restricts the speech of licensed counselors by prohibiting them from talking to their consenting clients about their goal and objective to change unwanted same-sex attractions, behavior, or gender conflict. Under no circumstances may any effort be undertaken to help the client assist in reaching that goal, even when the client specifically asks and consents and wants to reach a particular goal that is that client's choice of their own self-determination. Any effort to change romantic attractions, sexual orientation, behaviors, or identity is banned. This statute is both viewpoint and content-based. It allows counselors and minors to discuss or hear the subject of same-sex attractions and gender identity. It may be affirmed, but never seek to change. Any effort to change any of these... Mr. Stavart? Yes, sir. Can I interrupt you for a second? We have, in this case, don't we, a jurisdictional question under the 11th Amendment and Ex Parte Young? That has been raised, yes, your honor. With regards to that, this is injunctive relief, first of all, but the real question, the lower court correctly found that there is a relationship with the governor, particularly the Attorney General, with regards to enforcement of the statute. I'd like to point the court's attention to the Maryland Constitution. It is Article V, Section 3. In that particular section, as it relates to the Attorney General, that Constitution says that the Attorney General may prosecute and defend all cases in inferior federal courts in which the state may be interested or which the governor ultimately directs. The issue here is... Mr. Stavart? Yes. Mr. Stavart, hi. It's Diana Mott. What I'm not sure about is how that is a special relationship. It strikes me that that would be a relationship that the Attorney General would have with any Maryland statute. It would be a relationship to, certainly, Maryland statutes, unless the statute said otherwise, and the lower court found that there is definitely a relationship and a duty to defend, and also with the governor, as it relates to... I'm familiar with what the lower court said. What I guess I'd like from you is the case that you think is most helpful to you in saying that this relationship with the Attorney General has to every Maryland statute is the special relationship that the 11th Amendment calls for. Your Honor, I think Ex Parte Young would certainly be one because of the fact that we have injunctive relief. The other case is a case out of the... I believe it's South Carolina. It's a case involving a challenge to the law in that particular case with regards to marriage, and the court found while the governor did not have a relationship, the Attorney General did have a relationship with regards to enforcement, and it's virtually the same here. In fact, in pickup, the governor and the Attorney General were named, and also in King, governor and Attorney General were also named. Let me address something to you. You didn't cite any of the recent cases from the Fourth Circuit, but in Allen v. Cooper, we said a governor cannot be enjoined by virtue of his general duty to enforce laws, nor can an Attorney General be enjoined where he has no specific statutory authority to enforce the statute at issue. Now, we have applied that principle. That's a quote from an earlier case in Hutto, and Hutto relied on an earlier line of cases, but the notion that the governor and the Attorney General have general authority of the same nature you quoted from Maryland has not been sufficient. It seems to me this is an exception to the general immunity, and the idea is that you get an exception to enforce the law against the person who enforces the law, and in this case I understand it's a board that enforces the ethical requirement, right? Yes, it's a licensing board for the counselors, but not for the clients. For the clients, the only target that they would have or defend it would be the Attorney General or a governor. No, no, I'm asking who, and go ahead, Judge Richardson. So I want to ask a slightly different version of the same question. You have not cited section 17-513, but that section does give the Attorney General the specific authority to bring an action in the name of the state for conduct that is subject to disciplinary action by the board, and you don't cite that statute. But that statute seems to give the Attorney General specific authority to bring an action to enjoin conduct that is grounds for disciplinary action under 17-509, and that includes unprofessional conduct, which is the statute at issue here. Are you familiar with 17-513, and if so, why is that not the special relationship that you're trying to show? Judge Richardson, yes, that certainly is the special relationship that we're showing. In fact, the Attorney General is not only the one that can bring the litigation in the name of the state for unprofessional conduct, but he's also the one that's involved in working with the various agencies, including the licensing board, in the development of these rules on the front end as well. And when there's a... Can I follow up on that? If you agree on 17-513, that is limited, it seems to me, to be an injunction by the Attorney General. It's not discipline, so it's only prospective relief. And so you've alleged, and so I want to sort of pivot that to not talk about immunity. It might solve your immunity problem, but what I don't see it doing is solving your as you've alleged it, is that you're chilled by the discipline, the threat of discipline. And 17-513 doesn't give the Attorney General any retrospective disciplinary authority. So why, even assuming you get past the 11th Amendment sovereign immunity arguments, why would the court's order against the Attorney General and the governor, what would that do to redress the injury of discipline that you've alleged? Or the flip side of that, why do you think that discipline is somehow traceable back to the Attorney General or the governor? That's the part of this that I'm having trouble seeing. Yes, Judge Richardson. I think that the fact is that our client is clearly concerned about the discipline. But at the same time, he would also be just as concerned about enforcement of that disciplinary action against him. What he says is under a micro-shickle. But you agree it's fundamentally focused on the authority to discipline, not the authority to attain prospective injunctive relief? Well, I think it would be on both, Your Honor, because it's not only the discipline, but it's also the threat that he can't continue to do. This is all brand new. You're alleging, you're sort of speaking, you didn't cite any of this in your briefs. You didn't cite these cases, nor the statute that Judge Richardson pulled up. And the issue you were complaining about is that his license is at risk. And if his license is at risk, the question is who can put it at risk? Well, certainly the licensing board can put it at risk. And Your Honor. Right. But you didn't sue the licensing board. Correct, Your Honor. But even if this court finds that the governor and the attorney general are not the proper party, I would request that the court remand it for the designation of the proper party. The problem with that is, we'll be back in a year and a half, but the litigation and the legal arguments and the factual development and the attorney general is going to be exactly the same. So I'm interested in that argument too, because if you lack standing here, that means we lack like authority. And so generally speaking, when we lack Article III authority, we don't remand the case for further proceedings. We order the case dismissed because we lack Article III power to tell the district court to do anything. Well, Your Honor, we... Help me understand how it is that we can remand if we lack Article III authority. Your Honor, the case was dismissed without any opportunity to amend. And when we asked the attorney general... Did you, sir, sir, did you file a motion to amend with an accompanying order? I don't believe you did. No, we did not. The local rules require that. We did not file a motion to amend, but when we asked the attorney general, when they raised the issue about who is the enforcer, they're not going to or not thinking that they're the enforcer. The attorney general refused to respond to indicate what agency would in fact enforce  So we continue with... Well, you can read the statute, right? I mean, the attorney general doesn't have to read the statute for you. You're the plaintiff. That's correct. But, Your Honor, I just think that if we go back and refile, we can certainly amend and go back and add the licensing board. That's not going to affect, however, the individual clients, even if we bring them in the name of anonymous dope, because they don't have any relationship. They're not going to be disciplined by that. They're going to be ultimately disciplined, or they're ultimately going to have their counseling that they seek prohibited because their counselor is disciplined and or is enjoined by the state through the attorney general's action. So they don't have any relationship to that licensing board. They're not worried about discipline. They're worried about being able to get the kind of counseling that they receive. The one that certainly can cover all of that would be either the governor or the attorney general or amend to include the licensing board. But again, that's not relevant to the clients that are being represented by the counselor in this case. Well, maybe that goes to Judge Richardson's standing questions. Well, the fact is that the only one that they could have standing against would be the enforcer. And that would be the attorney general to enforce this law against their counselor. So what do you what do you cite for the counsel? What do you keep saying? The attorney general's the enforcer. And I get that sounds good for you, but on what authority is the attorney general enforcing any of this? I mean, the attorney general enforces criminal statutes if there were penalties. That makes sense. But the discipline part of this, the retrospective part of enforcing here seems to be solely lodged with the board, and there may be a limited prospective authority for the attorney general. But that's not enforcement or discipline. That's that's simply the power to bring an action to enjoin future conduct. Your Honor, the attorney general listed a number of statutes that are attached to their brief, which include the office of the attorney general having a review of decisions of the boards or commissions, which would include the licensing board in this particular case. The attorney general is involved in not just criminal, but also according to the statutes and the constitution that were attached to the answer brief involved in enforcing the civil laws of the case, but particularly with regards to overseeing and having input with this respect of these various boards or the commissions that one of them would be certainly the licensing board. And that, Your Honor, is under the and this is part of the attorney general's response, the Maryland Code Section 1-203 in terms of the attorney general's responsibility to review decisions or actions of a board commission, it says that the secretary and the health occupations, those were cited by the attorney general as an as an appendix to or as an exhibit to their brief. You say the attorney general's involved? What do you mean by involved? It says that the office of administrative hearings shall establish the process by which the office of administration of the attorney general reviews the constitutionality of statutes passed by the legislature. The test for Ex parte Young is to obtain relief against the person who is actually enforcing it by reason of the authority conferred by the statute. Correct, Your Honor, but this goes on to talk about that the board of commission may not, which would include the licensing board, may not implement a decision or a final action until after the office of administrative hearings has conducted the review. And this is part of where the attorney general's role is in terms of the development and overseeing of these enforcement rules, and if necessary, to ultimately enjoin the violation of the enforcement rules after discipline has ultimately been determined by that particular licensing board. Again, though, I would just recommend, I would just request that if this court concludes that the proper defendant is not before the court, that we would go back and amend it and add that licensing board. And then the same litigation, the same evidence and the same arguments and the same attorney general will be back here within about a month or so for us to be able to amend going back. But again, I think that the attorney general, just like in Pickup and King and all these other cases that challenge identical statutes as this, name the attorney general in all of those cases, the same arguments have come up in those cases and those courts of appeal have continued to move forward, not saying that these were improper parties and ultimately reached the merits. And we would respectfully request that this court do the same. I see that I'm out of time and I saved the rest of my time for rebuttal. Thank you, Mr. Staben. All right, Ms. Ellis. Thank you, Your Honor, and may it please the court. Judge Richardson, 17-513 of the health occupations article, I don't believe allows enforcement of section 1-203 of the health occupations article. It doesn't mention that article, I mean, that section in what it says, the grounds for an injunction for violation of 1-203. It doesn't list that, include that. I would also say that it's... Before you leave that, if you would. So, 513 says that they can bring an action for, and I'm just quoting, conduct that is ground for a disciplinary action under 17-509. Subsection 16 of 509 is discipline action for unprofessional conduct, quote unquote. And unprofessional conduct is the very words that 1-2112.1 uses to describe disciplinary or describe conversion therapy. It is, quote, unprofessional conduct. So, I presume the reason the board can bring disciplinary conduct under 509-16 is because it's unprofessional conduct. And therefore, the attorney general under 513 has the very same authority to bring injunctive relief. What's wrong with that chain? Because it does not say that it can enforce, the statute does not say that the attorney general or the attorney general has the authority to enforce section 1-212.1 of the health occupations article. Nor does it say that an injunctive action can be maintained under this 17-513 for violation of 1-212.1. What section, which section is it that... The argument is... Go ahead. Go ahead. I just want to understand the argument. So, your argument is that, and I think there are lots of reasons that 513 might not help the plaintiff here. But to understand your argument is that 513 doesn't apply because it doesn't specifically mention 1-212.1. When 1-212.1 categorizes certain therapy as, quote, unprofessional conduct, which is specifically included in 509, and 509 is what is specifically referenced by 513. I'm not sure I follow that argument. 1-212.1 authorizes actions to discipline. And those actions to discipline are administrative actions. It doesn't authorize actions for injunctive relief, which is what 17-513 authorizes. So, I would say that the Attorney General would not have the authority in his name to, currently his name, to enjoin the violation of 1-212.1 because the, under the Constitution, and statutes governing the Attorney General, there has to be specific authority for an Attorney General to, the Attorney General of Maryland, unlike perhaps in some of the other states that Mr. Saver referred to, for the Attorney General to take action. And that's simply not here. Let me ask you, let me ask you, under what section is the suspension of a license? That's the particular relief about which the plaintiffs are concerned. They would lose their license to practice. And the question is, under what section can the license be removed? And does the Attorney General have input to that section? The administrative actions are under 17-509, I believe, and the board makes those decisions. And so the board, what, the way in which the disciplinary process works is that the board will investigate and make a decision to charge a practitioner. An assistant Attorney General from a separate unit prosecutes those cases in front of the board, or at the Office of Administrative Hearing, and then the board makes the decision, a final decision, as to whether the charge has been sustained and whether some disciplinary action should be taken. If the licensee challenges that decision by the board, it starts its process through the Maryland State Court system on judicial review of an administrative decision, and the assistant Attorney General defends the board's action. But it's the board that makes the decision. And I want to correct something that counsel for Mr. Doyle stated when he was talking about 1-203 of health occupations article, the provisions that he was talking about that, or he was referencing that involved the Attorney General and the Office of Administrative Hearing are solely provisions that relate to potentially anti-competitive decisions and process to satisfy the incidental decision by the Supreme Court that there has to be independent review aside from the board. As a statute, does a statute make provision that an assistant Attorney General represents the board? No, it does not. That is, you know, as I'm sure you know, Judge Niemeyer, the Attorney General is generally responsible for representing the agencies and departments of the state. Well, it seems to me, it seems to me if the Attorney General is representing the board by whatever practice, then it could hardly be making the decision that the board makes. Exactly, Your Honor. And I would say that, you know, the district court got this aspect of the decision wrong, that the requirements of the special relation are under ex parte young simply aren't meant here. And in addition, I think Judge Richardson, you alluded to this. In the police view, Mr. Doyle doesn't have standing to pursue this case. In any event, he explains to his clients and he gets informed consent from his clients that he doesn't practice conversion therapy. Before you turn to the merits argument on standing, hypothetically, if I agreed with your co-counsel that amendment would be a viable option or maybe something that should have been considered, in your view, if we find that he lacks Article 3 standing, are we permitted to remand the case to the district court and direct that amendment be permitted or are we precluded from doing so? I believe you're precluded from doing so because I don't think there's any way to cure the standing issue if he is. Okay, but that's my hypothetical. My hypothetical is he can amend and he could solve the problem. I understand you disagree. That's why I wanted to call it a hypothetical. I'm presupposing that amendment would work. I'm asking the separate question of if we find he lacks standing, do we have the authority to remand for the district court to consider whether amendment is appropriate? I don't believe so because I can't set you a case. If a plaintiff in a case lacks standing, then the court has no jurisdiction. I would argue that the appropriate action is dismissal. If he thinks he can try again and establish standing in a different case, I think, unfortunately, probably the plaintiff would have the authority to do that or a different plan. But a district court could do that, right? If it was still at the district court level and the district court found that standing was lacking, Rule 15 would permit an amendment in that context, wouldn't it? Why is it different if we're finding it on appeal? I'm not sure that the district court would have authority to amend either. If the plaintiff doesn't have standing, the court doesn't have jurisdiction. I'm not sure that the district court would have that authority either. With respect to standing, in this case, Mr. Doyle says he doesn't do conversion therapy. For several years, he's been using an informed consent form with all of his clients. They understand that he doesn't do it and they agree that that's not what they're seeking. If he doesn't do what the statute prohibits, then in my view, he does not have standing under cases like Cooksey v. Futrell and Kenny v. Wilson. I mean, he does not have an injury in fact. But you would agree if he, if, again hypothetical, if he's not doing it because he's afraid of discipline, that that would be an injury in fact, right? You don't disagree with that premise. You're arguing that's not why he's doing it or what? Help me understand that. If in fact the conversion therapy because he was concerned about prosecution, that would be an injury in fact. But he says he doesn't do conversion therapy and he has been using this consent form. I think the first one in the record is from 2016. It's not something that he created in response to this litigation. That's what he'd been doing. He says he doesn't do it. He describes his practice as sexual and gender identity affirming, which I read and I heard him testify in his deposition is supportive of his clients, which that's not something that the statute prohibits. The statute doesn't prohibit, only prohibits efforts to change sexual identity or sexual orientation. The statute specifically excludes therapy that does not seek that goal. And Mr. Doyle repeatedly has said that he doesn't do it. So to me, that means he doesn't have standing to the combination of the wrong plaintiffs and the wrong defendant would require this court to dismiss the lawsuit. I think I would also ask, and this is obviously discussed in more depth in our brief, that the district court got it right with respect to whether there is a violation of the first amendment, that this is conduct because it involves speech as well. It is subject to intermediate scrutiny and it satisfies that task. Can you, I'm sorry, I will be quiet. I promise. Probably not actually. But why is it appropriate in this context where there appear, if we get to the merits, where there appear to be some plausible disagreements about the important meaning of various studies? And I'm not, again, just accept the hypothetical that there's some plausible disagreements. How are we resolving this at a motion to dismiss, which required the district court here to take the facts and allegations, the APA report and all the information that we've sort of parsed through here in the light most favorable to Mr. Doyle? And so what I'm having a little trouble, if we get to the merits, is understanding how that can be resolved at a motion to dismiss, as opposed to the preliminary injunction standard, which allows an inquiry into the likelihood of success, or summary judgment, which allows sort of a determination of facts. But I can't understand how, given this record with these plausible allegations with respect to the underlying reports, that it can be resolved at a motion to dismiss. Your Honor, I think the issue is whether when the legislature had a reasonable, had a basis. Well, first, let me back up a minute. I think there's no reason why the legislature has a compelling interest. The state of Maryland has a compelling interest in protecting children and protecting minors from harm. And the legislature found, in reviewing all of the reports to which you referred, that those reports supported the evidence that it provided a benefit. The evidence that is in the legislative record, all of those reports, the written testimony from various constituents, are all of the kinds of cases that are either at a preliminary injunction standard, meaning we're looking at the success on Sorrell, that's actually after a trial on the merits. But none of them are motion to dismiss cases. And admittedly, there may be an extreme case where a motion to dismiss is appropriate, but none of these other cases seem to address where there's a plausible claim at a motion to dismiss. There's also a more than plausible claim based on the documents in the record and the APA report in particular, which was part of the plaintiff's complaint, that it's harmful. And when there is disputed medical or healthcare-related issues, the Supreme Court has recognized that legislatures can choose to which group of claims to follow. And in this case, the legislature said, we think that all of those professional organization statements, the APA report, the SAMHSA report... So I hear that. And then last question, I promise. But in a case like NIFLA, like we don't see this like unwavering deference to the judgment of the legislature. Even in Holder, we don't see it in the... You mentioned law project cases. In our cases, Capital Associated or Wilkinson's decision in Stewart, there's not like this just like absolute deference. That's the point of intermediate or certainly strict scrutiny, is that we probe those a bit, but we probe them not in a motion to dismiss, but it's some other procedural juncture. Well, the trial court already determined that there was not a likelihood of success on the merits. And I think as a matter of law, there's simply not facts here to support proceeding. And that's the reason that the court dismissed the complaint. And I would ask the court to avoid the thorny constitutional questions and to dismiss it for lack of standing and violation of the 11th Amendment. But in the Thank you very much. Thank you, Miss Ellis. Mr. Staber? You'll have to unmute your... I still can't hear you. Can you hear me now? Yes. On August the 1st, the lower court found that we did sue the proper party and that the governor and the attorney general were proper parties. About seven weeks later is when this order came through. So there was no reason for us to file a motion at that point. And there was no cross appeal of that decision when the final order... Well, of course, there was a reason there. If it was raised and you were aware of it, you could have done your research and determined whether there was a risk to sue the right person. I mean, to obviate an issue that's before the court by filing an amended complaint is just routine procedural practice. Well, Your Honor, the court actually had ruled and accepted our arguments on that particular issue. So there was no concern at that point in time that we didn't have the proper parties before us. The lower court had already sided with us in a fairly lengthy memorandum order on this very issue. And then when we got to the actual final hearing, we then at the preliminary injunction bypassed all of that and just simply dismissed it despite the allegations that are there. I would say that on the standing with regards to the conversion therapy, no counselor uses that term. It's a political term. The APA task force doesn't use that term. The undisputed testimony of our client is that he does not use that term, but that the statute actually covers what he wants to do. He doesn't preset the client's objective. No counselor does. I thought I read your complaint and read his position to be that he doesn't practice it and his clients agree he doesn't practice it. And the only reason he brought suit is on the risk that they misconstrue what he does. No, Your Honor, he doesn't practice and no, no counselor that we know and has records has uses that term. It's not a term of counselors. So if you ask a counselor, do they practice conversion therapy? It will be no, because it's not a counseling term that's used in the statute. But when you look at the statute, any effort to change, he said, that's what he does do. And in fact, the deposition testimony, when he was asked that question, clients will set the objective and they're the ones who choose whether to affirm or whether to change. And when they select change as their self-determined objective, the statute prohibits him from being the GPS, if you will, to help that client reach their ultimate destination. So the term is never used by counselors. It's a political term that has been used in these statutes. It's been used since Kickup and King and now in this particular statute. And this statute is virtually identical to the King case out of the Ninth Circuit, which NIFLA abrogated along with abrogating the King case. Yet at the same time, the actual application and the definition of what constitutes, quote, conversion therapy, covers any efforts to change, even when the client is the one who seeks to change. And therefore, his clients in Maryland are covered by that. He's covered by it. And he can't help the clients reach that objective for change. The lower court properly found that we had standing on that particular issue because he clearly is covered and fears discipline because of any activity that he might engage in to help a client change. Any viewpoint on same-sex attraction regarding change is banned, but the subject matter is permitted. He can affirm those clients that want to be affirmed, but he can't help a client that wants to be changed to change or to seek attractions to members of the same sex. And that is a clear violation of the First Amendment. Your Honor, I see I'm out of time. I respectfully request this court reverse. All right. Thank you both very much. We are, as you know, because of the circumstances, remotely on a Zoom, we would normally come down and shake your hands. That's not possible in the circumstances, but that is our custom and tradition. And we ask you to receive that in spirit. We welcome you to the court and we'll be back to you when we make our decision. Thank you very much. We'll stand adjourned. Thank you. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Paul V. Niemeyer, Diana Gribbon Motz, Julius N. Richardson